IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| SCHOOL DISTRICT OF PHILADELPHIA | CIVIL ACTION |
|---|---|
| v. | NO. 15-4501 |
| JOHN POST, et al. | |

Baylson, J.                                                                                     August 23, 2017

**MEMORANDUM RE: DISTRICT'S MOTION FOR SUMMARY JUDGMENT & PARENTS' MOTION FOR LEAVE TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

In this case arising under the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act ("ADA"), John and Marissa Post (collectively, "Parents") filed a due process complaint against the School District of Philadelphia ("District") alleging that it failed to provide their son, D.P., a free, appropriate public education ("FAPE"), discriminated against him because of his disability, and retaliated against them. On July 5, 2017, this Court issued an Order granting Parents' Motion for Partial Judgment on the Administrative Record (ECF 68). See Sch. Dist. of Phila. v. Post, No. 15-4501, 2017 WL 2879684 (E.D. Pa. July 5, 2017). Now, in this Memorandum, we contend with the District's Motion for Summary Judgment on Parents' counterclaims (ECF 54) as well as Parents' Motion for Leave to Supplement the Administrative Record (ECF 62).

I.  **Procedural History**

Parents initiated this matter on December 21, 2014 by filing a due process complaint against the District in which they alleged that the District denied D.P. a FAPE under the IDEA, Section 504, and the ADA. Specifically, Parents argued that the District failed to provide D.P. "an appropriate educational program in the least restrictive environment as [D.P.] made the transition to school-aged

1

programming; that the District discriminated against [D.P.]; and that the District retaliated against . . . Parents." (Hearing Officer Report ("H.O. Rpt.") at 2.) The District countered that the special education program it provided for D.P. was appropriate and that it neither discriminated nor retaliated against Parents or D.P. After a four day evidentiary hearing, the Hearing Officer concluded that "the District denied [D.P.] [a] FAPE by failing to comply with its [least restrictive environment] obligations and that the District discriminated against [D.P.]." (Id. at 25.) The Hearing Officer ordered:

(1) The District to, within thirty days of the order, "convene a meeting of [D.P.'s] IEP team to revise the IEP for the 2015-16 school year to provide for [D.P.'s] placement in a regular education classroom in Elementary School to the maximum extent appropriate, utilizing the SAS Toolkit to determine appropriate supplementary aids and services;"

(2) The District to provide D.P. compensatory education of 360 minutes per week for each week school was in session from the date of the initiation of the due process complaint, October 15, 2014, through the end of the 2014-2015 school year. (Id.)

The Hearing Officer found in favor of the District on the retaliation claim. (Id.) On July 20, 2015, the District appealed the Hearing Officer's decision by filing a Petition for Review in the Commonwealth Court of Pennsylvania, which Parents removed to this Court. (ECF 1.) Parents filed an Answer and Counterclaims on August 20, 2015, seeking:

(1) Enforcement of the Hearing Officer's order requiring the District to convene a meeting of D.P.'S IEP team to revise his 2015-2016 IEP;

(2) Compensatory damages as a remedy for the District's intentional violation of D.P.'s rights under Section 504; and,

(3) Attorneys' fees and costs.

On September 23, 2015, Parents filed an Amended Answer and Counterclaims in which they added a claim for retaliation, coercion and intimidation for Parents' advocacy on behalf of D.P.'s rights. (ECF 5.) The District filed an Answer on October 14, 2015, and an Amended Answer on November 2, 2015. (ECF 7, 8.) On February 10, 2017, the District moved for summary judgment on

2

the counterclaims asserted by Parents (ECF 54), and on February 27, 2017, Parents responded (ECF 56). Parents' opposition to summary judgment included various attachments that the District moved to strike on March 23, 2017 (ECF 59). Parents' responded on April 6, 2017 (ECF 63), and the District replied on May 8, 2017 (ECF 66). Parents also filed a Motion for Leave to Supplement the Administrative Record on April 6, 2017 (ECF 62), to which the District responded on May 8, 2017 (ECF 65).[1]

## II. Motion for Summary Judgment

### A. Facts

The following is a fair account of the factual assertions at issue for these counterclaims, as taken from both parties' Statements of Facts and not genuinely disputed. On June 24, 2015, the Hearing Officer ordered the District to, within thirty days of the order, "convene a meeting of [D.P.'s] IEP team to revise the IEP for the 2015-16 school year to provide for [D.P.'s] placement in a regular education classroom in Elementary School to the maximum extent appropriate, utilizing the SAS Toolkit to determine appropriate supplementary aids and services." (ECF 54, District's Mot. for Summary Judgment ("Dist. MSJ"), District's Statement of Facts ("Dist. SOF") ¶ 1.) The Hearing Officer further stated that "nothing in this Order precludes the parties from mutually agreeing to alter any of the directives regarding the timelines, content of the IEP, or nature of compensatory education set forth in this decision and Order." (H.O. Rpt. at 26.) On July 24, 2015, within thirty days of the Hearing Officer's Order, a meeting was convened of several individuals, including D.P.'s first grade regular education teacher and kindergarten teacher, Principal Rock, the Special Education Director, Director of Professional Development, Special Education Liaison, a speech therapist and a special

---

[1] The issues presented in Parents' Motion for Leave to Supplement the Administrative Record and the District's Motion to Strike are identical.

education teacher. (Dist. MSJ, Dist. SOF ¶ 10.)[2] At that meeting, progress was made on implementing the SAS Toolkit but the process was not completed. (Id. ¶¶ 10, 11.) The parties agreed to continue the process at a subsequent meeting to take place on August 18, 2015. (Id. ¶ 11.)

### B. Legal Standard

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, "by citing to particular parts of materials in the record" set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1)(A). "Speculation and conclusory allegations do not satisfy [the non-moving party's] duty." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999) (superseded by statute on other

---

[2] Parents argue that this group does not constitute "the entire IEP team," because "[o]f the participants, Ms. Capitolo [the Special Education Director], Mr. Washington [the Director of Professional Development], Ms. Mintz [the attorney for the District], and Ms. Gran [the attorney for Parents] are not members of the IEP team." (ECF 56, Parents' Opp'n to Summary Judgment ("Parents' Opp'n"), Parents' Response to Dist. SOF ¶ 10.) But, Parents do not specify which members of D.P.'s IEP team were missing from the meeting. The fact that certain individuals not members of the IEP team were present does not preclude a finding that all members of the team were present.

grounds as recognized by P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009)). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

### C. Discussion

#### (1) Counterclaim for Enforcement of the Hearing Officer's Order

Parents' first counterclaim seeks enforcement of the Hearing Officer's order requiring the District to, within thirty days, "convene a meeting of [D.P.'s] IEP team to revise the IEP for the 2015-16 school year to provide for [D.P.'s] placement in a regular education classroom in Elementary School to the maximum extent appropriate, utilizing the SAS Toolkit to determine appropriate supplementary aids and services." (H.O. Rpt. at 25.) It is undisputed that the District convened a meeting of D.P.'s IEP team on July 24, 2015, within the thirty day time period prescribed. It is also undisputed that at that meeting, progress was made on completing the SAS Toolkit but that the Toolkit was not completed. The parties then agreed to continue the SAS Toolkit process at a subsequent meeting to be held on August 18, 2015, consistent with the provision in the Hearing Officer's Order allowing for the parties to "mutually agree[] to alter any of the directives regarding the timelines." (Id. at 26.)

Much of Parents' argument on this counterclaim stems from their recounting of the back and forth that led to the two meetings, including the intransigence of certain District representatives in scheduling, the District's unpreparedness for both meetings, and the fact that neither meeting resulted in a draft IEP based on an SAS Toolkit. (Parents' Opp'n at 4-11.) Indeed, D.P.'s IEP for the 2015-2016 school year was not completed and signed until April 2016, ten months after the Hearing

5

Officer's Order was issued, and at which time the planning for D.P.'s 2016-2017 IEP already needed to begin. Although this chain of events and the delayed execution of D.P.'s IEP were not contemplated by the Order, and seem to be the unfortunate result of the District's and Parents' continued difficulties working together, they do not contravene the plain language of the Order. Rather, the Order called for a meeting to take place of D.P.'s IEP team within a certain time period, at which meeting the team would use the SAS Toolkit to determine appropriate supplementary aids and services for D.P. That meeting occurred on July 24, 2015, and the parties mutually agreed to continue the process at a subsequent meeting. We do not find any material dispute regarding the District's implementation of that portion of the Hearing Officer's Order.

Parents' other main argument opposing summary judgment on this claim is that the Hearing Officer's Order set forth an educational placement for D.P. that must now be enforced under the IDEA's stay-put provision, 20 U.S.C. § 1415(j). (Id. at 10-11.) They characterize the Order as having mandated D.P.'s "full-time placement in general education classes, with an IEP based on the SAS Toolkit process." (Id.) Parents are correct that while the District's appeal of the Hearing Officer's decision is pending, the District is required to maintain D.P.'s "then-current educational placement" under Section 1415(j). They are also correct in stating that where the decision reached during the administrative review process is favorable to parents, it "must be treated as an agreement between the State and the parents," and therefore will become the child's "then-current educational placement" for purposes of the stay-put rule. See M.R. v. Ridley Sch. Dist., 744 F.3d 112, 119 (3d Cir. 2014); 20 U.S.C. § 1415(j). But, Parents err in characterizing the Order as having done any more than mandate a process for the District and Parents to follow, which process would then result in an "educational placement" for D.P. Because the Hearing Officer did not order the District to place D.P. full-time in general education classes for the 2015-2016 school year, the District did not contravene it by failing to do so.

6

Finally, we note that Parents' extensive discussion of the issues they faced in developing an IEP for D.P. for the 2016-2017 school year is irrelevant, as the Hearing Officer's Order specifically deals only with the 2015-2016 school year. Should Parents wish to pursue any claim that could have been brought under the IDEA based on the District's actions concerning D.P. for any time period outside of that considered by the Hearing Officer, they must exhaust their administrative remedies first. See 20 U.S.C. § 1415f(1)(A) (providing for an "impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency"); id. § 1415(l) (stating that any claim seeking relief that is "available" under the IDEA must be exhausted via the IDEA's administrative remedies).

Because there is no genuine dispute of material fact regarding the District's compliance with the Hearing Officer's Order, summary judgment is warranted on Parents' first counterclaim.

### (2) Counterclaim for Compensatory Damages

The District also moves for summary judgment on Parents' counterclaim for compensatory damages due to the District's violation of Section 504 and of the ADA. The District argues that Parents have failed to show a genuine dispute of material fact regarding the District's intentional discrimination against D.P., a required element of a claim for compensatory damages under both Section 504 and the ADA. (Dist. Mot. at 11-16.) Parents counter that the Hearing Officer found the District's discrimination against D.P. to have been intentional, which is accurate, and that that finding is supported by the record. (Parents' Opp'n at 12-16; H.O. Rpt. at 21 ("These actions of the District [in discriminating against D.P. on the basis of his disability] were undeniably intentional on its part.").)[3]

---

[3] For clarity of the record, we note that in our order granting Parents' Motion for Partial Judgment on the Administrative Record, we did not affirm the Hearing Officer's conclusion that the District's discrimination had been intentional. That finding was not essential to the holding of the Hearing Officer that the District had discriminated against D.P. in violation

7

The Third Circuit has held that a party seeking compensatory damages under Section 504 and the ADA may satisfy the intentional discrimination element by showing "deliberate indifference." S.H., 729 F.3d at 263. In order to prove deliberate indifference, the claimant must establish both "knowledge that a harm to a federally protected right is substantially likely . . . . [and] a failure to act upon that likelihood." Id. (quoting Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001)) (internal quotations omitted). Although no showing of "personal ill will or animosity toward the disabled person" is required, "deliberate indifference must be a 'deliberate choice, rather than negligence or bureaucratic inaction.'" Id. (quoting Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011) and Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 276 (2d Cir. 2009)). Here, Parents have shown that the District's initial placement determination and its subsequent removal of D.P. from the regular education curriculum were made because of D.P.'s disability, and therefore may satisfy the "deliberate indifference" requirement. After careful consideration of the record and specifically of the Hearing Officer's finding that the District's discriminatory actions towards D.P. were "undeniably intentional," we hold that genuine disputes of material fact exist regarding the intentionality of the District's actions and that summary judgment on Parents' counterclaim for compensatory damages under Section 504 and the ADA is therefore unwarranted.

### (3) Counterclaim for Retaliation

Finally, the District moves for summary judgment on Parents' counterclaim for retaliation. The District bases its motion on the Hearing Officer's finding that the District had not retaliated against Parents, Parents' failure to ask this Court to review that aspect of the Hearing Officer's decision, and the fact that Parents did not offer any pretrial discovery to prove retaliation. (Dist. Mot. at 17.)

---

of Section 504 and the ADA. See Ridgewood, 172 F.3d at 253 (holding that neither the RA nor the ADA require a plaintiff to prove that the defendant's discrimination was intentional). But, a finding of intentional discrimination is an essential element of any claim for compensatory damages under Section 504 and the ADA. S.H. v. Lower Merion Sch. Dist., 729 F.3d 248, 261 (3d Cir. 2013). Therefore, there is still an open question of fact regarding the intentionality of the District's discrimination against D.P.

Parents counter that significant evidence exists both in the administrative record and in the District's actions taken after the Hearing Officer's Order was issued demonstrating retaliation against them for their advocacy on behalf of D.P. (Parents' Opp'n at 16-29.)

In our judgment on the administrative record we affirmed the Hearing Officer's conclusion that the District had not retaliated against Parents. Therefore, the only possible factual basis for a retaliation claim at this juncture would be the events that transpired after the close of the administrative record, which occurred on June 9, 2015.[4] But, Parents have failed to exhaust their administrative remedies with respect to these allegations. Although Parents brought a retaliation claim at the administrative level, the allegations from the period following that considered by the Hearing Officer are outside the scope of that claim and therefore must be the subject of a new administrative review, should Parents wish to pursue them. The specific allegations at issue regarding actions taken by the District following the Hearing Officer's decision include: (1) Principal Rock accusing Ms. Post of having a mental disorder; (2) Principal Rock's refusal to set timely appointments for IEP meetings; (3) Principal Rock's telling D.P.'s first grade teacher to ignore the Posts and not speak with them after school; (4) the placement of a substitute teacher in D.P.'s classroom who was a "supporter of Principal Rock;" and (5) Principal Rock's refusal to allow an Inclusion Specialist retained by Parents to work with D.P.'s teachers to develop their skills in co-teaching. (Parents' Opp'n at 23-24.) None of these

---

[4] We note that Parents now also assert claims for incidents that allegedly took place prior to the close of the administrative record but that Parents did not assert as grounds for their retaliation claim before the Hearing Officer. Specifically, Parents base their retaliation claim on the following actions from prior to the close of the administrative record: (1) the exclusion of Ms. Post from volunteer roles in the fall of 2014; (2) Principal Rock's refusal to allow Ms. Post to observe D.P. in his kindergarten classroom during the 2014-2015 school year; (3) the District's placement of D.P.'s brother, J.P., in a remedial reading class in October 2014; and (4) the District's provocation and labeling of D.P. as a child with autism during his kindergarten year. These factual scenarios have been waived as a basis for Parents' retaliation claim because they were not raised before the Hearing Officer. See G.K. v. Montgomery Cnty. Intermediate Unit, No. 13-4538, 2015 WL 4395153, at *19-20 (E.D. Pa. July 17, 2015) (where claimants did not identify compensatory education as an issue at due process hearing, claim was waived); Neshaminy Sch. Dist. v. Karla B., No. 96-3865, 1997 WL 563421, at *5 (E.D. Pa. Sept. 3, 1997) (where claimants "agreed to limit the issues of the due process hearing" to exclude the issue of compensatory education, "the rules of exhaustion . . . preclude[d] [them] from raising the issue" before the district court). Here, the only bases for a retaliation claim raised in the due process hearing were "the District's actions in limiting [Ms. Post's] ability to volunteer in the classroom, threatening truancy charges, and participating in the association's efforts to remove her from office." (H.O. Rpt. at 21.) All other grounds for their retaliation claim that took place prior to the close of the administrative record, including each of the four (4) listed above, have been waived.

grievances were aired at the administrative level, because none occurred until after the administrative record had closed and the Hearing Officer had rendered her decision.

Generally, "completion of the IDEA's administrative process, i.e., exhaustion, . . . is required in order for the [IDEA] to 'grant[] subject matter jurisdiction to the district court[].'" Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 272 (3d Cir. 2014) (quoting Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994)). This basic precept of the IDEA framework applies not just to claims actually brought under the IDEA but also to any claim seeking relief that is "available" under the IDEA. See 20 U.S.C. § 1415(l). Here, Parents assert a counterclaim for retaliation under the IDEA, Section 504, and the ADA, which fits squarely into the Third Circuit's holding in Batchelor that "retaliation claims related to the enforcement of rights under the IDEA must be exhausted before a court may assert subject matter jurisdiction." Batchelor, 759 F.3d at 273-75 (stating that "[a]ppellants' retaliation claims are related to the provision of FAPE under 20 U.S.C. § 1415(b)(6) and, as such, must be exhausted").

In Batchelor, the plaintiffs appealed the district court's dismissal of their retaliation claims against the school district, arguing that such claims were not subject to the IDEA's exhaustion requirement or, alternatively, were exempt from exhaustion. Id. at 268. The court rejected the plaintiffs' arguments that the issues presented were "not educational issues" but rather "issues of civil rights resulting from [the] [d]efendants' retaliatory conduct," where the plaintiffs' complaint asserted "retaliation/failure to provide [a] FAPE" in violation of the IDEA, Section 504, and the ADA. Id. at 273. The court first looked to the IDEA's provision affording parents of disabled children the ability to present a complaint "with respect to *any* matter *relating* to the identification, evaluation or educational placement of the child, or the provision of a [FAPE] to such child . . .," and reasoned that the plaintiffs' retaliation claims "palpably 'relate[d]' to the District's provision of a FAPE" because the plaintiffs contended that they had been retaliated against for their advocacy on behalf of the student.

10

Id. at 273-74 (emphasis in original).  Similarly here, Parents assert that "[t]he District has retaliated against [them] for their advocacy for their son's rights under the [IDEA, Section 504, and the ADA]." (ECF 5, Amended Answer and Counterclaims ¶ 57.)

Although Parents did bring a retaliation claim in their due process complaint, which claim the Hearing Officer considered and ruled on, the only allegations in their counterclaim that have neither been waived nor already decided in our judgment on the administrative record were never aired at the administrative level, rendering them unexhausted.  See McCandless v. Vaughn, 172 F.3d 255, 260-61 (3d Cir. 1999) (in habeas corpus context, in order to exhaust state remedies prisoner must "fairly present" his federal claim in state court, which requires presenting the "federal claim's factual and legal substance to the state courts"); Lark v. Beard, No. 01-1252, 2006 WL 1489977, at *12 (E.D. Pa. May 23, 2006) (finding that a petitioner had not exhausted state remedies on an ineffective assistance of counsel claim where he alleged new factual bases for such claim in federal court that he had not "fairly presented to the Pennsylvania courts"); Schanzer v. Rutgers Univ., 934 F. Supp. 669, 673 (D.N.J. 1996) (discussing exhaustion requirement in the EEOC context and stating that "a potential plaintiff is required to first present to the agency those factual allegations subsequently raised in district court"); Brown v. Lewis, No. 89-103, 1990 WL 38682, at *4 (D.N.J. Feb. 23, 1990) (in habeas corpus proceeding, holding that although the petitioner's claim was "based upon the same legal theory as the legal theory underlying one of the exhausted claims, . . . different facts have been submitted to support the new claim," meaning that the claim was not exhausted in state court).

One exception to the exhaustion requirement in the IDEA context exists where the complaint at issue before the district court is the same as it was before the administrative tribunal.  See DeVries v. Spillane, 853 F.2d 264, 267 (4th Cir. 1988) (district court erred in requiring plaintiff to reexhaust as to IEP that had not been before Hearing Officer because IEP provided for the same educational placement as the properly exhausted IEP, rendering student's complaint before the district court the same as it had

been before the administrative tribunal). Parents rely on a line of cases applying this exception to support their argument that requiring reexhaustion here would be inconsistent with the IDEA because their evidence of retaliation subsequent to the Hearing Officer's decision is "substantially the same" as the evidence they proffered at the administrative level. We disagree, due to several critical differences between the non-precedential cases cited and the instant one.

For instance, whereas in DeVries at the district court the student complained of an IEP that provided the same allegedly deficient placement as had the IEP he brought before the administrative tribunal, here Parents assert entirely new allegations of retaliation than those considered by the Hearing Officer. Similarly, in Gill v. Columbia 93 School District, 217 F.3d 1027 (8th Cir. 2000) the court held that the district court had not erred in considering the IEP offered to the student for a year subsequent to the IEP that had been before the administrative tribunal because, "[w]hile IDEA plaintiffs are ordinarily required to exhaust administrative remedies before seeking judicial review, plans substantially similar to the IEP under review may also be considered." Id. at 1038 n.6 (internal citations omitted). The issue in DeVries and Gill—whether the court should consider a different IEP than the one that had been reviewed at the administrative level—is not analogous to Parents' attempts to bring facts before the Court that were never aired before the Hearing Officer in support of a novel retaliation claim for events occurring after the conclusion of the administrative process. Indeed, Parents are not asking us to consider whether, for example, a subsequent IEP that contained the same deficiencies as the 2014-2015 one contravened the IDEA, but instead are bringing what is essentially a new claim for retaliation against the District. The animating principle behind such cases as DeVries and Gill of not requiring reexhaustion "when the complaint remains the same though the IEPs change," is simply not implicated here. DeVries, 853 F.2d at 267.

We note that one Third Circuit case dealing with a claim brought under the Education of the Handicapped Act ("EHA"), the predecessor statute to the IDEA, touches on this issue, albeit remotely.

In Muth v. Central Bucks School District, 839 F.2d 113 (3d Cir. 1988), rev'd on other grounds, Dellmuth v. Muth, 491 U.S. 223 (1989), the court considered a situation where both the student and the school district appealed the decision of the Hearing Officer to the Secretary of Education, as required under Pennsylvania law, and the Secretary remanded the case to the Hearing Officer with instructions to the district to revise the student's IEP. Id. at 118. The Third Circuit held that the Secretary had erred in remanding the case and instead should have issued an appealable final order affirming or rejecting the hearing officer's decision because, "in the context of the EHA[,] a remand following an 'impartial review' is fundamentally inconsistent with the statutory scheme" due to the EHA's emphasis on "prompt resolution of disputes over the proper education of a handicapped child." Id. at 124-25. That holding led the court in Johnson v. Lancaster-Lebanon Intermediate Unit 13, 757 F. Supp. 606 (E.D. Pa. 1991) to conclude that one reason reexhaustion was not required in a case where the IEP before the court was different than the one that had been before the Hearing Officer was "the importance of speedily resolving EHA cases." Id. at 614 n.6 (also citing the similarity between the IEP before the court and the IEP considered at the administrative level).

We do not find the interest in swift resolution of cases concerning the educational placements of disabled children to sway in favor of waiving the exhaustion requirement for Parents' novel retaliation claim. Our judgment on the administrative record, the order accompanying this memorandum, and the upcoming trial will jointly result in the conclusion of the claims brought in Parents' due process complaint, subject to any appeals taken or post-trial motion practice. Any retaliation suffered by Parents following the completion of the administrative review, as well as any claim by Parents that the District committed further IDEA, Section 504, and/or ADA violations subsequent to the alleged violations before the Hearing Officer, are separate issues that must be remedied by the IDEA's prescribed administrative process. See Batchelor, 759 F.3d at 273. Unless

13

and until Parents go through that process, this Court has no subject matter jurisdiction over those claims. Id. at 272.

In sum, the facts upon which Parents base their retaliation counterclaim can be broken down into three groups: (1) those that arose in the time period at issue before the Hearing Officer and therefore are waived to the extent they were not raised there; (2) those that have already been considered and ruled on by the Hearing Officer and this Court; and (3) those that arose after the culmination of the administrative remedial process, which have not been exhausted. Because no set of facts proffered by Parents can support their retaliation counterclaim, summary judgment is granted as to that claim.

### III. Motion for Leave to Supplement Administrative Record

#### A. Legal Standard

Under the IDEA, the district court may consider the following in reviewing a Hearing Officer's decision: "the records of the administrative proceedings[, . . . and] additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C). In Susan N. v. Wilson School District, 70 F.3d 751 (3d Cir. 1995), the Third Circuit considered the meaning of "additional evidence" and concluded that whether to admit new evidence in an IDEA judicial review proceeding "should be left to the discretion of the trial court." Id. at 760. It declined to adopt a bright-line rule and instead directed district courts to consider whether "the evidence [would] assist the court in ascertaining whether Congress' goal has been and is being reached for the child involved." Id. The court noted that it had upheld exclusions of evidence where the district court determined it to be "cumulative and an improper embellishment of testimony previously given at an administrative hearing." Id. at 759 (citing Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist., 995 F.2d 1204, 1220 (3d Cir. 1992), Wexler v. Westfield Bd. of Educ., 784 F.2d 176, 181 (3d Cir. 1986)).

## B. Discussion

The evidence with which Parents seek to supplement the record is:

> (1) Excerpts of deposition testimony of Mabel Sei, D.P.'s first grade teacher in the 2015-2016 school year, and exhibits to that testimony (Pl.'s Opp'n, Exs. 3, 4);
>
> (2) Excerpts of deposition testimony of Jade Centanni, one of D.P.'s teachers in both the 2015-2016 and 2016-2017 school years, and exhibits to that testimony (Id., Exs. 1, 2);
>
> (3) Excerpts of deposition testimony of Marie Capitolo, a Special Education Director, regarding events subsequent to the 2014-2015 school year, and exhibits to that testimony (Id., Exs. 5-7);
>
> (4) Excerpts of deposition testimony of Roberta Benjamin, a nurse at McCall (Id., Ex. 8); and
>
> (5) Declaration of Ms. Post dated February 24, 2017 (Id., Ex. 9).

The brunt of the District's arguments against supplementation is that the proffered evidence is cumulative, and that much of it pertains to events that took place after the 2014-2015 school year, making it irrelevant and also prompting questions of exhaustion. We agree with the District—the additional pieces of evidence either (1) concern irrelevant events which took place after the close of the administrative record, (2) relate to incidents that occurred during the period of administrative review but that were not aired before the Hearing Officer, or (3) are cumulative of other testimony adduced at the due process hearing. The only exception, and therefore the only additional evidence that is admissible, is Ms. Benjamin's testimony and two paragraphs of Ms. Post's declaration.

First, we consider those pieces of evidence which concern events subsequent to the time period reviewed at the administrative level: the deposition testimonies of Mses. Sei, Centanni, and Capitolo and exhibits thereto, as well as paragraphs 28-60 of Ms. Post's declaration. The Third Circuit has held that post-hearing evidence and issues should be supplemented <u>only</u> where it is useful to "assess[] the reasonableness of the district's initial decisions regarding a particular IEP or the provision of special

15

education services at all." Susan N., 70 F.3d at 762 (counseling courts to be vigilant in not "countenance[ing] 'Monday Morning Quarterbacking' in evaluating the appropriateness of a child's placement") (quoting Fuhrmann v. East Hanover Bd. of Educ., 993 F.2d 1031, 1040 (3d Cir. 1993)). Here, Parents attempt to characterize the proffered post-hearing evidence as relevant to their claim for enforcement of the Hearing Officer's order and to their retaliation claim. We disagree. As discussed above, the Hearing Officer's order was narrowly circumscribed and has not been violated; evidence of the parties' continued difficulties working together on subsequent IEPs for D.P. is beside the point and does not reflect a failure to enforce the Hearing Officer's order. Similarly, the evidence of post-hearing retaliation does not aid in our review of those actions of the District that were the focus of the administrative remedial process. Rather, it merely attempts to open a new can of worms that must be the focus of a novel due process complaint, should Parents wish to pursue it.

In G.A. v. River Vale Board of Education, No. 11-3801, 2013 WL 5305230 (D.N.J. Sept. 18, 2013), the court faced a similar inquiry. There, the parents attempted to supplement the administrative record with various pieces of post-hearing evidence, including some that concerned an IEP subsequent to the one that was considered at the administrative level. Id. at *8. The court refused to admit the evidence relating to the subsequent IEP, holding that "[t]o the extent that the parties seek to widen the scope of review and litigate issues that arose subsequent to the underlying administrative proceeding, those claims will not be entertained." Id. Similarly here, Parents have failed to show why a review of the proposed supplemental post-hearing evidence would aid in our review of the District's actions that were the subject of the due process hearing and that are therefore properly before the Court. We note that the principles animating our above discussion of exhaustion are clearly implicated here, as well, with the general concept being that Parents cannot circumvent the IDEA's prescribed remedial process by bringing claims that arose after the conclusion of the due process hearing. See Jeremy H. v. Mount Lebanon Sch. Dist., 95 F.3d 272, 283-84 (3d Cir. 1996) (affirming district court's conclusion that

claims not raised in the administrative proceeding as well as those that arose after its conclusion had to be litigated administratively and could not be raised in a due process appeal).

There are two remaining pieces of evidence that do not concern events subsequent to the Hearing Officer's decision: the deposition testimony of Ms. Benjamin, and paragraphs 1-25 of Ms. Post's declaration. The deposition testimony of Ms. Benjamin, which has been carefully reviewed by the Court, entirely concerns Ms. Benjamin's duties in tracking the mandated clearances that volunteers who work with children must have in order to work with students at McCall. Parents presumably put forth this evidence in order to support their claim that the policy requiring such clearances was unfairly applied to prevent Ms. Post from volunteering in D.P.'s classroom in retaliation for her advocacy on behalf of D.P. We admit this evidence because it is relevant to the retaliation claim, because Ms. Benjamin was not a witness at the administrative hearing, and because we see no prejudice to the District in doing so.

Finally, we consider paragraphs 1-25 of Ms. Post's declaration, which largely concern the District's alleged retaliation against Parents for advocating on behalf of D.P. The declaration first rehashes the District's discrimination against D.P. and the various bases for Parents' original retaliation claim. (Parents' Opp'n, Ex. 9 ¶¶ 1-6, 8-9, 11, 17-25.) This testimony "merely repeats or embellishes matters already adequately established of record in the administrative proceedings" and, "[c]ritically, . . . offers no additional insight into the 'reasonableness of the school district's [decisions which are the subject of this review].'" Robert B. v. West Chester Area Sch. Dist., No. 04-2069, 2005 WL 2396968, at *10 (E.D. Pa. Sept. 27, 2005) (Baylson, J.) (quoting Susan N., 70 F.3d at 762). We therefore exclude this piece of additional evidence. See Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994) (upholding the exclusion of additional evidence that served only to repeat or embellish matters already adequately established of record in the administrative proceedings under review); see also Susan N., 70 F.3d at 759 (although declining to adopt a bright-line rule regarding

17

admission of testimony from witnesses who testified at administrative level, noting with approval the First Circuit's statement that "the additional evidence clause 'does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of "additional."'") (quoting Town of Burlington v. Dep't of Educ., Comm. of Mass., 736 F.2d 773, 790 (1st Cir. 1984), aff'd on other grounds, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)); Burlington, 736 F.2d at 791 ("A practicable approach, we believe, is that an administrative hearing witness is rebuttably presumed to be foreclosed from testifying at trial.").

The declaration then goes on to detail various new bases for Parents' retaliation claim which occurred prior to the close of the administrative record but were never aired before the Hearing Officer. (Parents' Opp'n, Ex. 9 ¶¶ 7, 10, 12-16.) As discussed above in the context of summary judgment on Parents' retaliation counterclaim, Parents waived their ability to pursue a retaliation claim based on incidents which took place during the period of administrative review to the extent that Parents did not raise such factual bases before the Hearing Officer. Therefore, those portions of the declaration that introduce evidence of these facts are not admissible. See G.A., 2013 WL 5305230, at *8; see also Metro. Bd. of Pub. Educ. v. Guest, 193 F.3d 457, 463 (6th Cir. 1999) ("[T]he district court exceeded its jurisdiction to the extent it used additional evidence to rule upon issues beyond those presented to the ALJ."). The only portion of Ms. Post's declaration that we admit is paragraphs 26-27, which deal exclusively with the implementation of the Hearing Officer's Order in the immediate aftermath of said Order

In sum, Parents' Motion for Leave to Supplement the Administrative Record is denied except as to the deposition testimony of Ms. Benjamin and paragraphs 26-27 of the declaration of Ms. Post.

## IV. Conclusion

For the reasons discussed above, the District's Motion for Summary Judgment is granted as to Parents' counterclaim for enforcement of the Hearing Officer's Order and for retaliation. It is otherwise denied. Parents' Motion for Leave to Supplement the Administrative Record is denied except as to the deposition testimony of Ms. Benjamin and paragraphs 26-27 of the declaration of Ms. Post.